**John C. CAPEK, et al.**

v.

**Mark MENDELSON, et al.**

**Civ. A. No. 91–7396.**

United States District Court,
E.D. Pennsylvania.

Sept. 22, 1992.

Allen L. Feingold, A.L. Feingold Associates, William A. De Stefano, De Stefano & Warren, P.C., Philadelphia, Pa., for plaintiffs.

Louis B. Kupperman, Obermayer, Rebmann, Maxwell & Hippel, Allen Weinberg, Philadelphia, Pa., for defendants.

Dennis J. Cogan, Abramson, Cogan, Kogan, Freeman & Thall, P.C., John W. Walter, Paul A. Bechtel, Jr., Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, Pa., for third-party defendants.

### MEMORANDUM

ROBRENO, District Judge.

Present before the court is the quintessential business dispute involving multiple parties, complex issues of fact and law, skilled advocates and a not insubstantial amount of money at stake. Not surprisingly, the case has spawned numerous discovery disputes leading to a veritable discovery gridlock. The question before the court is how best to resolve these disputes without undue burden on scarce judicial resources while affording the parties their rights to pretrial discovery.

After a review of the pleadings in this case, consideration of the discovery motions before the court, and a hearing, it is clear to the court that, left to their own devices, the litigants in this case will continue to squander not only their own time and money but will continue to call upon scarce judicial resources.[1] In light of this

---

**1.** Civil Justice Reform Act of 1990. *See infra* pp. 98–99 and notes 6 and 7.

background and for the reasons set forth below, I will deny all the discovery motions now pending and, in their place, will enter a case management order (the "Case Management Order") setting forth in detail the procedure which will govern future progress of the litigation.

### A. Background

The underlying dispute involves allegations of fraudulent misrepresentation regarding the presentation, marketing, and sale of shares in the Kidder Street Corporation. The complaint, pleaded in nine counts and 71 paragraphs, implicates federal and state securities statutes and common law causes of action against the defendants. The defendants, in turn, have brought a third-party complaint against the alleged promoters of the sale. Recently, I allowed the plaintiffs to file an amended complaint making the third-party defendants direct defendants in the case.[2]

The following discovery motions are presently before the court: Plaintiffs' motion for sanctions and production seeking to compel outstanding answers to interrogatories and production of documents and to require the individual defendant to submit to a medical examination to determine the validity of the defendant's position that he is medically unable to be deposed; defendant's motion for protective order seeking to limit the scope of certain subpoenas served by plaintiffs on defendants' private counsel and accountant which request production of "[a]ll records, financial records, pleadings, documents, files or anything having to do with [individual defendant], his wife or any partnership, company, business or organization with which [individual defendant] or his wife were in any way

involved ...."; plaintiff's motion for production and sanctions seeking enforcement of the Order of July 2, 1992, entered by the Honorable Robert F. Kelly directing the taking of the individual defendant's deposition[3] and the production of certain documents within five days of the date of the Order.[4] There are also outstanding, although not yet due, a set of interrogatories and requests for production of documents propounded by defendants upon plaintiffs. The parties also have quarrelled over the order in which depositions are to be taken, the place where the documents are to be produced and the cost for duplicating the documents to be produced.

Despite this flurry of motion practice activity, the litigants have so far accomplished little if anything by way of discovery. While the case was filed in November of 1991, no depositions have yet been taken. Also, while the defendants have apparently answered some of plaintiffs' interrogatories and produced certain documents, the plaintiffs are dissatisfied with the answers and deem the document production to be inadequate.[5] Each side blames the other for the lack of progress and asks the court to impose monetary sanctions against the non-complying party.

### B. Discussion

Discovery practice has become the staple of contemporary litigation. Its central features and the early high hopes connected with its adoption were summarized by the Supreme Court as follows:

> The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under

---

2. See Capek v. Mendelson, 1992 WL 236887 (E.D.Pa.1992) (memorandum and order granting motion for leave to file amended complaint).

3. Apparently shortly after the Order of July 2, 1992 was entered, the individual defendant underwent some heart related surgical procedure which he now contends prevents him from being deposed.

4. The plaintiffs had previously filed a motion for production and for sanctions which request-

ed the relief granted by Judge Kelly in his Order of July 2, 1992.

5. At the September 9, 1992 hearing on the discovery motions, all parties claimed that the prospect of settlement had also deterred them from carrying out some of the discovery. To test this proposition, and with the consent of all parties, the Court has scheduled a plenary settlement conference with counsel and parties for September 22, 1992.

the prior federal practice, the pre-trial functions of notice-giving issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

*Hickman v. Taylor*, 329 U.S. 495, 500, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947). Sadly, these lofty objectives often have crashed upon the shoals of "hard ball" litigation turning the art of advocacy into trench warfare. *See* S.Rep. No. 416, 101st Cong., 2d Sess. 20–22 (1990) U.S.Code Cong. & Admin.News 1990, pp. 6802, 6823–6825 (discovery abuse transforming litigation into war of attrition). Public and professional criticism of these practices now abounds.[6] The results are not only delay and expense to the parties but also interference with "access to the courts, adjudication of cases on the merits, and the ability of the civil justice system to provide proper and timely judicial relief for aggrieved parties." 28 U.S.C.A. § 471 (1978 & Supp.1992) (historical and statutory notes; congressional statement of findings).

In response to this problem Congress enacted the Civil Justice Reform Act of 1990, 28 U.S.C. § 473(a) which mandates the early and on-going judicial management of the pretrial process including controlling the extent of and timing for discovery.[7] Under the mandate, "[f]ederal trial courts are now required, by statute, to implement techniques and strategies designed to dispose of cases in an efficient and inexpensive manner." *Schwarzkopf Technologies Corp. v. Ingersoll Cutting Tool Co.*, 142 F.R.D. 420, 423 (D.Del.1992). This activist approach, however, must be tempered by "a sense of proportion." *See Report of the Advisory Group of the United States District Court for the Eastern District of Pennsylvania Appointed under the Civil Justice Reform Act of 1990* at 81 (1991). "If a judge sets out to extirpate every bit of excessive discovery, the cost to the litigants, let alone to the court, would soon exceed any savings that could be achieved. Conferences in chambers and the motion practice that would inevitably result also involve billable hours, hours that may or may not move the litigation forward." *Id.*

With these principles in mind i.e., recognition of the central place of discovery in contemporary litigation practice, a realization that the parties in this case alone are unwilling or unable to litigate this case efficiently and fairly, cognizant of the danger of excessive judicial involvement and, in light of the recent transfer of the case to

---

6. *See, e.g.,* Judicial Improvements Act of 1990, Pub.L. No. 101–650 (1990) U.S.Code Cong. & Admin.News 1990, p. 6802; Federal Judicial Center, *Case Management and Court Management in United States Courts,* at 17 (1977) (judicial control required for lawyers to complete within a timely fashion); Peckham, *A Judicial Response to the Cost of Litigation: Case Management, Two Stage Discovery Planning and Alternative Dispute Resolution,* 37 Rutgers L.Rev. 253, 266 (1985) (court's traditional remoteness contributes to devastating abuses which threaten to subvert system of due process).

7. 28 U.S.C. § 473(a)(2)(C). *See generally* S.Rep. No. 416, 101st Cong., 2d Sess. (1990) U.S.Code Cong. & Admin.News 1990, p. 6802 for a discussion of the legislative history of the Civil Justice Reform Act of 1990 which led to the development of a requirement for a civil justice expense and delay reduction plan. The Civil Justice Reform Act of 1990 is the short title for the Judicial Improvements Act of 1990, Pub.L. No. 101–650 (1990), codified at 28 U.S.C. §§ 471–482.

my docket,[8] I decline the invitation to engage in the micro-adjudicatory task of ruling upon each discrete discovery dispute now outstanding and, instead, opt for providing the parties with a road map and a clearly marked track on which to litigate. This road map, the Case Management Order which is being entered on this date, draws its essence from the "principles and guidelines of litigation management and cost and delay reduction" contained in the Civil Justice Reform Act,[9] and the provisions of the Civil Justice Expense and Delay Reduction Plan (the "Local Plan")[10] *See, e.g., Francis v. Pascht*, No. 90–7096, 1991 WL 246917, at *1 (E.D.Pa. Nov. 19, 1991) (Waldman, J.) (repeated requests for continuance inconsistent with the Plan). The Case Management Order incorporates a number of the recommendations for streamlining discovery contained in the Plan including self-executing discovery[11]; an early and firm date for trial and for the filing of dispositive motions; a procedure for identification and narrowing of discovery issues as well as for their amicable resolution, and if necessary, prompt adjudicatory response by the judicial officer.

A road map will not work if the drivers are unwilling to look at the sign posts. Nor will judicial management and technique alone work sorcery on otherwise intransigent litigants and their counsel. In such cases, the use of sanctions by the court may be compelled. *See, e.g.,* Fed. R.Civ.P. 11, 37; 28 U.S.C. § 1927. This does not yet appear to be warranted in this case. All interested parties are represented by experienced and sophisticated counsel, two of whom are themselves parties to this action. No one party appears to be the culprit for the current gridlock. All parties profess a desire for judicial guidance. Therefore, the court will exercise its discretion and, guided, by a "sense of proportion," will implement the Case Management Plan.

An appropriate Order follows.

## CASE MANAGEMENT ORDER

AND NOW on this 22nd day of September, 1992, upon review of plaintiff's motion for sanctions and production, defendant's motion for protective order, and plaintiff's motion for production and sanctions (II), responses thereto, and replies by plaintiffs (the "Discovery Motions") and after hearing, it is hereby ORDERED:

1. All Discovery Motions are *denied;*

2. The Orders of May 7, 1992 and July 2, 1992 concerning scheduling and discovery are *vacated;*

3. All discovery shall be completed by December 18, 1992 in accordance with the terms of this Order;

4. The parties shall simultaneously comply with the document production provision of the Civil Justice Expense and Delay Reduction Plan (the "Plan"), as if this matter had been filed after December 31, 1991. Each party shall file by September 28, 1992 a certification of compliance with Section 4:01 of the Plan (Discovery—Duty of Self–Executing Disclosure) providing therein a detailed description of the information supplied;

---

**8.** The case was transferred to my docket on August 24, 1992.

**9.** The principles identified in the statute were included in the Plan: (1) systematic, differential treatment of civil cases that tailor "case-specific management" to specified criteria; (2) early and ongoing control of the pretrial process by the involvement of a judicial officer; (3) special treatment for cases identified as "complex," with particular attention to discovery; (4) encouragement of cost-effective discovery through voluntary exchange of information; (5) requiring good faith effort of the parties to resolve discovery disputes; and (6) utilization of alternative dispute resolution. Plan at 3–4.

**10.** This judicial district was designated by the Judicial Conference of the United States as a "Pilot District" under Section 105(b) of the Civil Justice Reform Act of 1990. It adopted the Plan and made it effective December 31, 1991. In formulating the Plan, the court had the benefit of a report prepared by an Advisory Group appointed by the Chief Judge after consultation with the other judges of the court comprised of a diverse group of litigants who regularly appear before the court. Plan at 1–2.

**11.** This case was filed on November 29, 1991, and therefore, the parties were not subject to this provision of the Plan which did not go into effect until December 31, 1991.

5. By October 12, 1992, each party seeking additional discovery shall serve upon the party from whom discovery is sought a schedule of documents sought, describing with specificity the categories of documents sought and the period of time for which discovery is sought. Next to each category of documents sought, the party seeking discovery shall state briefly the purpose for seeking discovery, i.e., liability, damages. Each category of documents shall be numbered consecutively. By October 17, 1992, the party from whom discovery is sought may object to the production of any document or category of documents in part or in total. Each objection shall be numbered to coincide with the number on the Discovery Request and shall state the grounds for the objection with specificity. General objections such as "overly broad" and "unduly burdensome", in the absence of specific basis, will not be considered adequate. By October 22, 1992, the parties shall meet and confer in order to resolve their disputes. If after conference a dispute still remains, the matter will be submitted promptly by the requesting party to the court for adjudication;

6. Production of documents, unless the parties by agreement provide otherwise, shall take place at the office of counsel for the producing party unless, the party requesting production, makes arrangements, including terms of payment, with a commercial copying service;

7. A schedule of depositions shall be developed as follows: By October 21, 1992, each party seeking to take depositions shall serve upon all parties a schedule of natural persons or entities (the "Deposition Schedule Request") it wishes to depose. By October 27, 1992, any party objecting to the taking of any depositions identified in the Deposition Schedule Request, may serve upon the party seeking the deposition objections to one or more of the proposed depositions stating specifically the grounds for the objection. By November 3, 1992, the parties shall meet and confer to resolve any disputes. If a dispute still remains, the matter will be submitted to the court for adjudication;

All depositions shall take place consecutively between the hours of 9 A.M. and 5 P.M., Monday through Friday, beginning on November 30, 1992 and ending on December 18, 1992. The court will determine the order and place of the depositions unless otherwise agreed to by all parties. Counsel and parties shall make appropriate arrangements to be available to participate in the depositions during these dates.

8. Two sets of written discovery, in the form of interrogatories and requests for admissions, respectively, may be propounded by a party seeking discovery. The first set may be served by October 1, 1992 and shall be responded to by October 20, 1992. The second set shall be served by November 1, 1992 and shall be responded to by November 19, 1992.

9. Experts' reports and curriculum vitae, respectively, shall be exchanged by December 1, 1992;

10. Motions for summary judgment shall be filed by December 31, 1992. A response to a motion for summary judgment shall be filed by January 15, 1993.

11. A pretrial memorandum, proposed jury instructions, jury questionnaires, special interrogatories and verdict forms, and motions in limine shall be filed (with a copy delivered to Chambers) by February 5, 1993;

12. A final pretrial conference shall be held during the week of February 8, 1993;

13. This case shall be specially listed for trial on February 15, 1993.

AND IT IS SO ORDERED.